# NEGRO LOUISA JASON *vs.* JAMES T. HENDERSON.

A negro who has been adjudged to be free, cannot maintain an action on the case to recover damages for having been unlawfully held in servitude, even though he may have been in the enjoyment of freedom at the time he was claimed as a slave, provided the party claiming him acts in good faith, supposing the negro to be his property.

APPEAL from the Circuit Court for Howard county.

*Trespass on the case* by the appellant, one of the negroes who recovered freedom in the case of *Henderson vs. Jason*, reported in 9 *Gill*, 483, against the appellee, to recover damages for unlawfully detaining her in servitude. Pleas *non cul.* and *limitations*.

*Exception.* The facts of the case in regard to the plaintiff's right to freedom, and her going at large and acting as free at

the time she was seized and claimed by the defendant as belonging to the estate of Mrs. Frances Warfield, of which he was administrator, are fully stated in the case reported in 9 *Gill*, 483. The plaintiff then prayed the court to instruct the jury, that upon all the evidence, it was competent for them to find for the plaintiff such damages as they should deem equivalent to her services from the time she was taken possession of by the defendant, or three years before the issuing of the writ in this case, but the court (Brewer, J.,) refused to grant this instruction, and to this ruling the plaintiff excepted, and the verdict and judgment being in favor of the defendant, appealed.

The cause was argued before Le Grand, C. J., Tuck and Mason, J.

*Wm. H. G. Dorsey* and *Thos. S. Alexander* for the appellant:

The question in this case is, whether a negro, entitled to freedom, and in the actual enjoyment of it at the time of seizure, can maintain an action on the case against the person who unlawfully seizes and detains him in servitude, to recover damages for the unlawful caption and detainer?

The counsel are aware that the prevailing impressions are adverse to the maintenance of the action. At the same time they deem themselves warranted in affirming that the question to be discussed is unaffected by adjudications in this State. And they confidently believe, that treated as an open question, the weight of the argument derived from principles and analogies of the law, are in their favor. They ask—they are conscious they will receive—a patient hearing.

There can be no doubt that a negro, admitted to be free, may recover for assault, battery and false imprisonment suffered at the hands of one who claims no title to his services. At the same time it is settled, that a negro who was held as a slave, and has recovered his freedom by a legal proceeding, cannot maintain an action of trespass, *vi et armis*, against the party who is, by such recovery, shown to have detained him

unlawfully in servitude.   3 *H. & McH.*, 538, *Queen vs. Ashton.*   8 *Gill*, 322, *Franklin vs. Waters.*   The distinction between the cases is, that in the latter, the wrong is done under color of title.   The *git* of the action of trespass is the unlawful force.   And the defendant who confesses the force is compelled, by way of special plea, to set out the circumstances on which he relies for his justification.   But probable cause of suit, or caption, or detainer, is not, on the principles of pleading applicable to this form of action, justification.   If, then, the action of trespass could be resorted to for redress of wrong of this description, a defendant, failing to show title to the negro detained, might be exposed to vindictive damages, without regard to the circumstances under which his claim was advanced.   In a State where slavery is recognized, such consequences would be of evil tendency.   But, if it is deemed expedient that the master or claimant of a negro supposed to be a slave, should have every facility for asserting his rights, and, therefore, should not be exposed to damages for the unsuccessful prosecution of his claim, is it at all necessary, for the purpose of upholding any rule of policy, that our free negro population should be liable to ruthless aggression, and that a wrong done to a negro, which, simply considered, would be punishable by the law, should become dispunishable and harmless in the eye of the law, by the pretext falsely advanced, that the wrong-doer acted as master, and in assertion of his rights as master.   Our courts are open to suitors of all colors; and the failure to maintain one prosecution, does not ordinarily constitute cause for another, by the defendant.   But a malicious prosecution, without probable cause, is actionable. A resort to a legal proceeding, without probable cause, is an abuse of the law, and is punishable as such.   As a fair and necessary deduction, it would seem to follow, that one who unjustly seizes a negro, in the actual enjoyment of freedom, without reasonable or probable cause for claiming him as a slave, ought to be answerable to the slave for the consequences of the wrong, in an action founded on the special circumstances of the case.   The *git* of the action in such case, would

not be the failure to show good title, but the seizure of a negro, in the actual enjoyment of freedom, by one who has no reasonable color of title to his service.

It will be objected that this action is of first impression. *Litt.*, sec. 108. And, as Lord Coke says, in commenting on the passage, *Co. Lit.*, 81 *b.*, non-usage, where there is no example, is a great intendment that the law will not bear it. But the objection derives its greater or less degree of influence from the circumstances of the particular case. Numerous instances are to be found in which it has been entirely disregarded. In the instance referred to by Littleton, the *Stat. of Merton* had provided an ample remedy, by entry, for a wrong of frequent occurrence. The absence of any personal action to redress the wrong, was supposed to furnish a strong argument against the action. *Co. Lit.*, 81, *b.*, *note* 2. In *Ashby vs. White*, 2 *Lord Raym.*, 938, the argument was used to defeat an action on the case against a returning officer, for unlawfully rejecting the vote of a qualified voter for burgesses to Parliament. It was said, that the House of Commons was the judge of the elections of its members—that this remedy had been found, by experience, to be adequate—and that the action now sought to be maintained, was an experiment which, if sustained, might bring the courts in conflict with Parliament. In the King's Bench, the case was decided against the plaintiff. But Powell, justice, who was of the majority, expressly declared, that the novelty of the action was no argument against the action; "for there have been actions on the case brought that had never been brought before, but had their beginning of late years, and, we must judge, upon the same reason as other cases have been determined by." Lord Holt says, if the party "has a right, he must, of necessity, have a means to vindicate and maintain it, and a remedy if he is injured in the exercise or enjoyment of it; and, indeed, it is a vain thing to imagine a right without a remedy; want of right and want of remedy are reciprocal." And, in his very elaborate opinion, he refers to many cases in which the objection was disregarded. The judgment was reversed by

the House of Lords, (1 *Br. P. C.*, 45;) and the principles of Lord Holt were fully vindicated. In more recent times the same principles have been asserted and applied.

In *Cowper*, 39, *Jones vs. Randall*, Lord Mansfield says, "the law of England would be a strange science indeed, if it were decided on precedents only. Precedents serve to illustrate principles, and to give them a fixed certainty. But the law of England, which is exclusive of positive law enacted by statute, depends upon principles, and these principles run through all the cases, according as the particular circumstances of each have been found to fall within the one or other of them."

In 2 *Atk.*, 392, *Whitchurch vs. Hide*, Lord Hardwicke says, "there is but little weight in the objection, that the plaintiff has no remedy at law. If he has a sole exclusive right, no doubt but he has a remedy. And if any person infringe that right, and he cannot bring a common action of trespass, he may have an action on the case; for the law will not permit a man who has a right to be without a remedy."

In *Chapman vs. Pickersgill*, 2 *Wils.*, 145, an action on the case for maliciously suing out a commission of bankruptcy, it was objected that such an action had never been brought, and that the statute had prescribed a specific remedy. Pratt, chief justice, says, "it is said this action was never brought; and so it was said in *Ashby vs. White*. I wish never to hear this objection again. This action is for a tort; torts are infinitely various, not limited or confined, for there is nothing in nature which may not be an instrument of mischief." Ashton, J., in *Millar vs. Taylor*, 4 *Burr.*, 2345, after referring to various cases to sustain his position, affirms, that "the remedy by action upon the case is suited to every wrong and grievance that the subject may suffer from a special invasion of his right." In *Pasley vs. Freeman*, 3 *Term. Rep.*, 63, Ashurst, J., admits that where cases are new in their principle, it is necessary to have recourse to legislative interposition in order to remedy the grievance. But he affirms, that "where the case is only new in the instance, and the only question is upon the appli-

cation of a principle recognized in the law to such new case, it will be just as competent to courts of justice to apply the principle to any case which may arise two centuries hence, as it was two centuries ago. If it were not, we ought to blot out of our law books one-fourth part of the cases that are to be found in them." And this, Parke, J., in 7 *Taunt.*, 489, says, "is the very nature of an action in the case." "A special action on the case was introduced for this reason, that the law will never suffer an injury and a damage, without a remedy." *Willes*, 580.

Conceding, then, that the seizure of a negro, free by law, and in the actual enjoyment of freedom, by one who has no color of title to his service, would be a wrong; such wrong, if perpetrated under pretext of exercising the right of caption, which the law concedes to the supposed owner, for the purpose of regaining possession of his supposed slave, ought to be treated as an abuse of the process of the law. And if no other remedy is open or provided, for this very reason the negro shall have his action on the case.

We are next met by the decision of this court in 5 *Md. Rep.*, 95, *State vs. Van Lear.* Of the judgment of the court on the facts and merits of that case, we do not complain. There is, in the opinion, however, an expression which, separated from the context, and taken in its greatest latitude, would seem inconsistent with our argument. As the expression is used by way of argument or illustration merely, it is presumed that we do not transcend our privilege in making an effort to show that the position taken, though true in the general, is not accurate in its application to every particular.

It may be assumed, upon the authority of *Jenings vs. Higgins*, 1 *H. & J.*, 344, that the negro who petitions for his freedom, has a right to require the defendant to enter into a recognizance; and that on the failure of the latter to give the recognizance, the negro is at liberty to depart from his service.

Whence the court derived the authority to require a recognizance, is not stated in any of the cases. The petition for freedom was in use prior to the act of 1796, and it is very

probable owed its origin to the necessity which compelled
our provincial courts to modify, and in some instances invent
remedies suited to our condition, in furtherance of justice,
Much of our local practice is founded on local usage; and
indeed the courts of justice in England have not hesitated to
extend, to limit and to modify their proceedings, with refer-
ence to changing exigencies. But over principles of law the
courts have and profess to have no control. They may de-
clare, expound and apply existing law, but cannot make new
law. They cannot create a right where no right is created
by law. They cannot adjudge that to be wrong, which the
law has not denounced as a wrong. They cannot introduce
a remedy for a supposed wrong, where no remedy has been
provided by law. When therefore the courts in this State
require the defendant to a petition for freedom, to enter into
a recognizance, we assume that the detainer in servitude of
one who is entitled to his freedom, is, in the eye of the law,
a wrong, for which wrong the party is entitled to satisfaction
in damages. But if the detainer be a wrong—and a wrong
for which the party is entitled to a remedy—is he limited to
the special remedy to be found by enforcing the stipulations
of the recognizance. We have seen that where a statute in
affirmative words provides a remedy by action, to be prose-
cuted according to the course of the common law, and which
remedy is in the general found adequate to the injury, the
party is not precluded, even in such case, from a resort to the
remedy which the law provides in the general for that descrip-
tion of injuries. *A fortiori*, such consequence cannot be
deduced from the allowance by authority of the court, of a
remedy adapted to special cases, and to be enforced in a
summary manner.

Now it is to be observed, that upon the hypothesis assumed
in the opinion of the Court of Appeals, the right of the negro
to satisfaction for an unlawful detainer, is limited to the case
in which the defendant has given a recognizance. If the
court omits to exact a recognizance, the right of the negro is
gone, or rather it has never been developed into legal exist-

ence. He is at liberty in such case to depart from the defend-
ant's service. But he may be ignorant of his rights, or the
defendant against law may restrain his freedom of departure.
Trespass will not lie in either of these cases. And yet the
moral turpitude of the defendant in availing himself of the
ignorance of the negro, or of his own superior force, may be
greater than that of the original detainer. It cannot be that
the rights of an ignorant negro in actual bondage are to be
prejudiced by the act or omission of the court, or the fraud
or violence of the defendant. In the absence of a recogniz-
ance, the court would hardly deny to the negro the satisfaction
to which he would have been entitled if a recognizance had
been given.

We have before us a reference to the case of *Negro Jack
vs. Hopewell*, the record of which will be found in *Liber MM,
No.* 1, *folio* 354, in the Court of Appeals. The petition
was filed in St. Mary's county court—no recognizance was
given by the defendant. Judgment was rendered against the
negro. He appealed to the general court, where the judg-
ment of the county court was reversed, and a new judgment
entered in favor of the negro, for freedom and costs. The
defendant in his turn appealed to the Court of Appeals, and
thereon was required to give bond, conditioned amongst other
things to pay to the negro, in the event of an affirmance of
the judgment, such "reasonable hire or wages as shall be
adjudged by the Court of Appeals *from the time of filing his
petition.*"

The inferences are, that according to the rule of practice,
the recognizance may be required from the defendant, at any
stage of the proceeding; and that when given, it will stand
as security for all hires or wages, from the time of filing the
petition. But this must be on the hypothesis, that the negro
is by law entitled to compensation for his services rendered
after his complaint made to the court of his illegal detention.

But if there exists the right, and if the formal remedy can
be brought into existence by the *fiat* of the court at any
moment, prior to the entry of final judgment, the omission of

the court to exercise its power, or, to speak more accurately, to discharge its duty, though it may preclude the application of relief in that particular form, cannot deprive the negro of his right to have justice meted out in his favor in some other form.

It is highly probable that the remedy by petition was first allowed in the case of an indented servant, claiming that his term of service had expired, or that from some other cause he was entitled to his freedom. The transition was easy to the case of a negro, once a confessed slave, and now claiming freedom by act of his once acknowledged master; and again, to the case of the issue of a slave emancipated, but against right detained in servitude. In the two earliest cases the original caption is not complained of, and in all the detainer is under fair color of title. The condition of the petitioner is not changed. His original state of servitude is simply prolonged, and the injury in the main is compensated for by the allowance of reasonable hire or wages, which he might have earned if a free man in like manual employment. The courts may have been satisfied of their competency to assess such damages, and may have thought that speedy justice would be doubly grateful to the petitioner. Whence their authority to assess such damages against the defendant is not of easy solution. If we are at liberty to speculate on the analogies of the law, we conjecture that the jurisdiction originally rested on the consent of the parties. It may be that the recognizance was invented to induce the submission of the defendant to the exercise by the court of a doubtful jurisdiction. This conjecture would be corroborated and placed beyond the limit of a reasonable doubt, if it could be shown that the courts had refused to assess damages in any case, on the ground that the defendant had not given a recognizance. If the jurisdiction to assess the damages in a summary manner may not be exercised where there is no recognizance, and may be exercised where there is a recognizance, the petitioner must in all cases have a right to compensation well founded in the law; and if in any case the jurisdiction is declined by the

defendant, or for any cause is not exercised by the court, the petitioner must be remitted to his ordinary remedy for the redress of the wrong suffered by him. It is probable therefore that the recognizance was allowed as a cumulative remedy, to be enforced only at the election of the defendant, or perhaps with the consent of both parties.

But it will be observed that the recognizance does not profess to reserve to the court the authority to assess damages for an unlawful caption. It does not reach the mischief of the seizure of a negro free, and in the actual enjoyment of freedom by one who shows no title to his services. For the unlawful caption and for the damages resulting from an unlawful detainer, destroying the business of the negro unjustly captured and detained, breaking up all his domestic relations, and reducing him from the condition of freedom to that of a slave, the remedy on the recognizance is wholly wanting, and doubtless it is wholly wanting because of the conscious inability of the courts to assess the damages which would atone for the injury. Upon strict principles of law such wrongs ought to be redressed by resort to the action of trespass *vi et armis.* But if considerations of policy deny the resort to this peculiarly appropriate remedy, we have the high authority of Lord Hardwicke, before quoted, for asserting that for this very reason the negro wronged shall be allowed an action founded on his special case.

In conclusion, then, we say that the adjudged cases and the practice, so far as we have been able to collect from an examination of the ancient records, show:

1st. That where a negro files his petition to be freed from a condition of slavery confessed to have had a legal origin, it is competent for the court to require the defendant to enter into a recognizance, whereby he stipulates, amongst other things, that in the event of recovery by the negro, the court shall have authority to make him an allowance for hire or services rendered by him to the defendant since the filing of his petition. And this authority has been exercised by the courts.

2nd. That the defendant may decline to give such recognizance, and in this event the court cannot assess damages for hire or services of the petitioner against the defendant. The coercive power of the court is to be exercised only by discharging the negro from service during the litigation.

3rd. That prior to the dictum in *State vs. Van Lear*, in 5 *Md. Rep.*, 95, there existed no judicial authority in support of the position, that where a recognizance had been given it constituted the sole remedy of the negro; and none in support of this other position, that the defendant, by refusing to give a recognizance, could defeat the claim of the negro to compensation for hire or service, during the time intervening between the filing of the petition, and his actual discharge from the defendant's service.

4th. That there is no authority for the position that the recognizance was ever applied, or was deemed applicable to the case of a negro, who complains that he was in the actual enjoyment of freedom at the time of his capture, and who claims compensation, as well for the original caption as for the subsequent detainer.

5th. That upon the principles and analogies of the law, the jurisdiction exercised by the court, to assess damages against the defendant, is founded on the consent of the defendant evidenced by his entering into a recognizance. That if the jurisdiction in the case where a recognizance is given is exclusive, it must be so on the hypothesis, that the court derives a power to conclude the rights of a negro, whose state of actual servitude deprives him of the due exercise of discretion. That the exercise of the jurisdiction in a case where the recognizance is given, demonstrates the right of the negro to invoke some other remedy, where the recognizance is not given, and the summary jurisdiction of the court is declined. That in the ordinary case, the measure of damages is the value of the services actually rendered by the negro to the defendant since the filing of the petition. That where the negro complains of the caption as well as detainer, the damages are to be assessed upon a view of all the circum-

stances, and, therefore, are in such case proper to be assessed by a jury.

*Robert J. Brent* for the appellee, submitted the cause, relying upon the cases of *Franklin vs. Waters*, 8 *Gill*, 322, and *State, use of Clements, vs. Van Lear*, 5 *Md. Rep.*, 94.

MASON, J., delivered the opinion of this court.

The question involved upon this appeal is, whether a negro, who has been adjudged to be free, can maintain an action on the case to recover damages for having been unlawfully held in servitude?

This very question was determined in the case of *Franklin vs. Waters*, 8 *Gill*, 322, which was recognized by that of *The State vs. Van Lear*, 5 *Md. Rep.*, 91, and settled adversely to such a claim.

The counsel for the appellant, in this appeal, have sought to distinguish the cases by showing that, in this, the negro was in the actual enjoyment of her freedom at the time of her seizure by the appellee, while in the others they had always been held and claimed, under color of title, as slaves.

The facts disclosed by the record do not warrant the supposed difference between the cases. It is true that the present appellant had been in the enjoyment of her freedom before she was claimed by the appellee as his slave, but it is not true that she was seized wantonly, and without color of title, and by him pressed into servitude, as the facts in the record plainly show.

We are not prepared to say, that a negro, avowedly free, and who may be forcibly and wantonly captured, without color of title, and reduced to slavery, would not have a remedy in an action at law against the perpetrator of such a wrong. But such is not this case. We have no doubt that the appellee, in this instance, supposed the negro to be the property of the estate he represented, and there appears a show of title for such a claim. Under such circumstances, the present question is not distinguishable from that settled in the two cases

56  v.7

before referred to, and we feel bound, by the authority of those cases, to affirm the judgment of the Circuit Court.

*Judgment affirmed.*